# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**MYRTLE LYNN PREWITT**                                                                  **PLAINTIFF**

**V.**                                           **CASE NO. 1:06CV338**

**MISSISSIPPI STATE UNIVERSITY**                                          **DEFENDANT**

## ORDER

This cause comes before the court on the motion of plaintiff, Myrtle Lynn Prewitt, for reconsideration of the court's June 7 denial of her appeal of the Magistrate Judge's minute order regarding the drafting of the revised pretrial order.

Prewitt initially filed suit against defendant, Mississippi State University ("MSU") on December 13, 2006. That complaint alleged violations of the Equal Pay Act and Title VII of the Civil Rights Act of 1964. The Title VII claims alleged Prewitt was discriminated against based on her sex and race.

In November 2007 Prewitt's attorneys withdrew from the case. On July 21, 2008 MSU moved for partial summary judgment. In October 2008 Prewitt obtained new counsel. On January 7, 2009 this court granted in part and denied in part MSU's motion for partial summary judgment. That order barred Prewitt's Equal Pay Act claims prior to December 13, 2003. The court found Prewitt's Title VII claim for salary disparity was barred by her failure to act within the limitations period. The court found Prewitt's Title VII hostile work environment claim could survive summary judgment. Finally the order granted summary judgment on any retaliation claim Prewitt may have wanted to bring. This claim was briefly mentioned in Prewitt's response to the summary judgment motion, but it was not raised in her complaint or Equal Employment

Opportunity Commission ("EEOC") charge.

On May 26, 2009 Prewitt's second counsel withdrew from this matter. On May 28, 2009 a revised pretrial order was entered. On May 29, 2009 Prewitt's current counsel made an appearance. Six months later on November 29 Prewitt asked the court for permission to amend the pretrial order. On December 29, 2009 the court denied that motion asking Prewitt to start the briefing process as to whether amendment should be allowed.

Prewitt then filed a motion asking the court to apply the Lilly Ledbetter Fair Pay Act to her claims and to reinstate her retaliation claims under both Title VII and the Equal Pay Act. The court granted Prewitt's motion regarding the Lilly Ledbetter Fair Pay Act. The court denied Prewitt's attempt to revive any retaliation claims. The court then gave Prewitt and MSU a deadline for amending the pretrial order to reflect this ruling. The parties were unable to come to an agreement by that date. The court referred this problem to Magistrate Judge Davis. Prewitt appealed Judge Davis' decision. The court denied Prewitt relief. Aggrieved by this decision Prewitt filed the instant motion for reconsideration.

It is difficult for the court to follow exactly the bounds of relief Prewitt seeks. Prewitt's reply to the response of defendant, Mississippi State University ("MSU") states:

> In this case, the plaintiff timely objected to U.S. Magistrate Judge Jerry A. Davis' May 13, 2010 Minute Order which ordered the plaintiff (a) not to raise *County of Washington v. Gunther*-type claims in the pretrial order, (b) not to raise the apparent failure of the attorneys for the defendant to follow Mississippi's laws and regulations for the employment of private attorneys to represent public universities, (c) not to add Title VII stipulations to the pretrial order, and (d) to designate which of the plaintiff's exhibits were related to compensation issues. This Court should consider, under *Stover* and *Riascos*, which of the above items should be added as amendments to the complaint, with particular emphasis on the Gunther-type claims and the failure of the defendant and its private attorneys to follow the employment laws in the State of Mississippi. *See generally, Sherman v. Hallbauer*, 455 F.2d 1236, 1242 (5th Cir. 1972).

This type of briefing is typical of Prewitt's cryptic style.

In *Sherman* the Fifth Circuit held a theory raised for the first time in response to a summary judgment should be considered as a motion to amend the complaint. 455 F.2d at 1242. Specifically the court wrote:

> [I]n the interests of justice the district court should have construed the Shermans's frantically revised theory of the case, as plainly set forth in their memorandum in opposition to summary judgment, as a motion to amend the pleadings filed out of time. The command of Rule 15 is straightforward and permissive. On the facts of this case, fair treatment for the Shermans requires that they not be deprived of their day in court simply because, for a time, their attorney did much to insure that the day would never come.

*Id*. The *Sherman* opinion begins by stating:

> This is not the ordinary reversal of a district court's decision granting summary judgment against plaintiffs whose complaint stated a cause of action upon which the case should have gone to trial. The bizarre feature of the case is that the plaintiffs insisted-until the waning moments of the pre-trial proceedings-upon construing the hazy factual scenario so that it stated, at best, only a tenuous legal claim under Florida law. Misled by the plaintiffs' original insistence on their shaky legal position and their failure to focus on a last-minute shift to a solid legal position, the district court granted summary judgment for the defendant. Because the record reveals clearly that the plaintiffs finally succeeded in bringing a viable interpretation of the case to the judge's attention, we hold that it was improper for the district court to grant summary judgment in this case.

*Id*. at 1237.

The court can not fathom how this precedent applies to Judge Davis' rulings in regard to raising any alleged failure of MSU in following proper protocol in hiring counsel, adding Title VII stipulations to the pretrial order, or designating which exhibits were related to compensation issues.

On the other hand this case is directly on point as to the court's grant of summary

judgment on Prewitt's retaliation claims.[1]  In her ninety-two page response to MSU's motion for partial summary judgment filed on August 25, 2008 Prewitt stated:

> In addition to a hostile work environment, the above facts also indicate retaliation.  A prima facie case of retaliation is demonstrated by showing that (1) the employee engaged in protected activity, (2) the employer took [a] materially adverse action against the employee, and that (3) a causal connection exists between the protected activity and the materially adverse action.  *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317 (5th Cir. 2004); *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405 (2006).  In *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405 (2006).  [T]he U.S. Supreme Court defined "materially adverse" as an action that could "dissuade a reasonable worker from making or supporting a charge of discrimination" under Title VII.  It is clear that the September 13, 2005 Diehl letter, the September 19, 2005 Leightley letter, and the October 4, 2005 Hopper letter were issued in response to the plaintiff's "asking questions" about gender discrimination and racial discrimination.  In addition, the plaintiff testified that, after she filed the complaint, a co-worker informed the plaintiff that she did not want to "participate" in this case because "she was afraid because of her job."  Thus, a prima facie case of retaliation has been demonstrated.

The court ruled that Prewitt's claim was barred because it had not been raised prior to the end of discovery.  However, it appears the court should have viewed this portion of Prewitt's response as a motion to amend.  Normally under such circumstances the court would simply delay the pending trial and allow the parties to work through this possibly viable claim.  The nature of this litigation, however, counsels against such an action.

The court finds this matter should be dismissed without prejudice and all statute of limitations temporarily stayed.  Prewitt has delayed resolution of this matter, purposefully confused the instant proceedings and repeatedly failed to timely raise arguments.  Her actions have created a situation in which the court can not provide the parties a fair resolution.  As

---

[1] Prewitt filed this motion as one for reconsideration of the court's denial of an appeal from a Magistrate Judge's order.  However, it is properly a motion for reconsideration of the court's first summary judgment order.  The court will consider the motion without deciding whether or not such a request can properly be brought before the court.  Such procedural confusion has become common place in this action.

discussed below this dismissal is warranted by Prewitt's actions and best serves justice and judicial economy.

Prewitt filed suit in December 2006. On November 5, 2007 Prewitt's attorneys were allowed to withdraw. At that time she was given thirty days to find new counsel or inform the court of her intention to proceed *pro se*. Prewitt failed to comply with that order. More than two months after the order was issued Prewitt informed the court she was attempting to hire new counsel. Forty eight days later she moved the court to appoint counsel. This approximately four month delay in the proceedings was caused entirely by Prewitt.

Prewitt then began to represent herself *pro se*. Prewitt's failure to proceed timely caused the discovery deadline to be moved from December 21, 2007 to July 12, 2008. Following the close of discovery MSU filed its motion for partial summary judgment. Judge Aycock gave Prewitt thirty days to respond to the motion. Prewitt filed a response on August 25, 2008. That same day a final pretrial conference was held.

On September 8, 2008 Judge Aycock recused herself from this matter. This court then took up the case. At that point there were a number of open disputes and pending discovery problems. The court reset the trial for January 12, 2009 and set a new discovery deadline of September 29, 2008. Judge Davis then required the pretrial order be filed by December 12, 2008.

The court also granted Prewitt through September 22, 2008 to either hire an attorney or inform the court of her desire to represent herself. On September 19, 2008 Prewitt moved the court for an extension of time to find counsel. The court granted Prewitt until October 20, 2008 to hire an attorney. On October 2 William L. Bambach made an appearance on behalf of Prewitt. At his request the discovery deadline was extended until October 31, 2008.

On October 20, 2008 Bambach filed a response to MSU's motion for partial summary

judgment some three months after it was filed.[2]  Over the objection of MSU the court considered this out of time filing.

On January 8, 2009 Prewitt moved the court to continue the trial and refer this matter to Judge Davis for a settlement conference.  The court granted Prewitt's request.  However, the case did not settle and was reset for trial on June 1, 2009.  On May 19, 2009, Prewitt again moved the court to continue the trial date.  This continuance was requested because Prewitt was unaware of the trial date until one month before it was set to begin, so that she might spend time with a sick relative, and so that an interlocutory appeal of the court's decision regarding MSU's second motion for partial summary judgment might be taken.  The court denied that motion.  The court found ample notice of the trial date was given and Prewitt had provided no information regarding the status of her sick relative.  Further the court declined to certify an interlocutory appeal on an issue which it had decided in Prewitt's favor.

Prewitt's tenuous relationship with Bambach broke down in this period.  Bambach withdrew from the case.  At that time George Dunbar Prewitt made an appearance.  On May 29, 2009 Prewitt filed another motion to continue.  This motion to continue was granted because of Prewitt's change in counsel.  The trial of this matter was reset for January 11, 2010.

Five months later Prewitt filed a motion to amend the pretrial order.  Due to the briefing required to decide that motion the trial once again had to be continued.  Apparently hoping for yet another continuance Prewitt has once again filed a motion seeking amendment of the pretrial order just days before this matter is set.

This history of stalling and delay counsels against another long extension which would be

---

[2] Prewitt had already filed a *pro se* response obviously written by her brother, George Dunbar Prewitt, who had not yet made an appearance in the case.

required to consider the new claims Prewitt wishes to raise.

In addition to causing multiple delays Prewitt has also injected confusion throughout this matter. Prewitt's inability to get along with her various attorneys created uncertainty for the court and MSU as this case progressed. Prewitt's involvement of her brother in this matter, before he made his official appearance, also created confusion as evidenced by the September 2008 order issued by this court.

Prewitt has also confused matters by mixing nonsensical arguments with legitimate claims. For example Prewitt asked for an interlocutory appeal of the court's denial of MSU's second motion for partial summary judgment. Prewitt won the underlying motion on every issue presented. It is startling that anyone would believe a request for interlocutory appeal was appropriate under such a circumstance. Multiple motions of such a nature distract the court from properly identifying and resolving legitimate claims.

Mistakes caused by these distractions will likely cause a lengthy appeals process. That process itself has been confused because of Prewitt's insistence on relitigating every motion and then still declining to accept the judgment of the court. Prewitt has created a mess of motions, orders, and opinions which are nearly impossible to sort through.

The most persuasive reason for the instant dismissal is Prewitt's failure to raise issues timely. The instant motion and its history is illustrative of the process Prewitt has used throughout this matter. Prewitt's EEOC charge never mentions retaliation claims. Prewitt then filed suit without raising these claims. Approximately forty-five days after filing suit Prewitt filed an amended complaint without raising any retaliation claims.

After the close of discovery and seven months after filing her amended complaint Prewitt filed a response to a motion for partial summary judgment which contained one paragraph

asserting retaliation claims.  It is at this point that Prewitt argues *Sherman* required the court to construe her response as a motion to amend.  As neither *Sherman* nor its progeny were mentioned in the response, the court did not follow its dictates.  Instead the court found all such claims barred by a failure to raise them earlier.  That order was entered on January 7, 2009.

On November 29, 2009 Prewitt filed a motion "to amend the May 28, 2009 Pretrial Order."  That motion in effect asked the court to reconsider its ruling in relation to Prewitt's retaliation claims.  Thus Prewitt waited eleven months to ask for reconsideration of the court's failure.  Additionally, she never cited to any authority related to the doctrine expressed in *Sherman* nor does Prewitt make any argument that might have given the court a hint Prewitt wished the response brief to be considered as a motion to amend.  Instead Prewitt incorrectly argues the amended complaint actually contains allegations which raise retaliation claims.

On January 7, 2009 Prewitt filed a motion for reconsideration which once again asked the court to allow Prewitt to bring retaliation claims.  The totality of the argument presented in that filing is that Prewitt was actually retaliated against.  Prewitt never addresses her failure to raise such a claim or the *Sherman* doctrine.  The court of course denied relief.

Unable to live with such a ruling Prewitt insisted on putting retaliation claims in the amended pretrial order.  Judge Davis ordered Prewitt not to include claims which had been dismissed.  Prewitt then appealed that decision.  Prewitt's appeal included no mention of *Sherman* instead focusing on the fact that she could make out a potential retaliation claim.  The court continued to deny relief because Prewitt had not addressed the grounds on which the retaliation claims were originally dismissed.  Doubtlessly, knowing that such relief would be denied, Prewitt for the third time in this matter asked for an interlocutory appeal.  Of course Prewitt had not raised any legitimate grounds for such an appeal.

Finally on the Tuesday before the trial was set to begin Prewitt asked for reconsideration of that decision. It is then for the first time that Prewitt raised *Sherman*. The court then became aware that prior Fifth Circuit precedent likely called for the retaliation claims to be added to this suit. The proper time to add them would have been years ago when this litigation started. The court would have been open to adding those claims as late as this January when it allowed new claims because of a change in the statute of limitations that came about during the course of this litigation. Prewitt of course failed to raise a convincing argument at each of these junctures.

This failure of Prewitt and her counsel created the instant situation. Prewitt's failure counsels for dismissal.

This case has gone forward for four years with three different plaintiff's attorneys. It has become an amalgamation of mismatched and vague theories. Dismissal without prejudice will allow Prewitt to bring a coherent action, will allow the court the opportunity to correctly focus on the actual issues at hand, will allow for a record that can reasonably be appealed, and will save MSU from having to defend itself from undisclosed claims.

There will be some prejudice to Prewitt as she will have to wait even longer to adjudicate her alleged injury. However, she is responsible for the delays in this matter and thus brought that prejudice on herself.

As such the court will DISMISS this action without prejudice. The court will STAY all applicable statutes of limitations for ninety days so that Prewitt may refile a suit relating back to the filing of this matter.

This the 17th day of June, 2010.

**/s/ MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**